**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS CENTRAL DIVISION**

| | | |
|---|---|---|
| **THOMAS VIEL, on behalf of himself and all others similarly situated,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. _________** |
| **VGW, LTD; VGW HOLDINGS US; VGW US, INC.; VGW HOLDINGS, LTD.; VGW LUCKYLAND, INC., VGW GP LTD., VGW CANADA, INC. VGW GAMES LTD, and VGW MALTA, LTD.,** | ) | |
| **Defendants.** | ) | |

**STATE-WIDE CLASS ACTION COMPLAINT**

Plaintiff Thomas Viel, an adult resident citizen of the state of Massachusetts, on his own behalf and on behalf of all others similarly situated in the Commonwealth of Massachusetts, files this state-wide class action complaint against VGW, Ltd; VGW Holdings US; VGW US, Inc.; VGW Holdings, Ltd., VGW Luckyland, Inc., VGW GP Ltd., VGW Canada, Inc., VGW Games Ltd., and VGW Malta, Ltd. (collectively, "VGW" or "Defendants").

1. This state-wide class action seeks recovery of illegal gambling losses by Massachusetts residents who played VGW's illegal online gambling games.

Plaintiff seeks, on his own behalf and on behalf of all similarly situated Massachusetts residents,

(1) a declaratory judgment that VGW's games violate federal law, and that VGW's online terms of service, which set out the terms and conditions under which the illegal gambling is conducted, are therefore unenforceable in federal court;

(2) a declaratory judgment that the online terms of service and the arbitration provision contained in the terms of service are each void as violative of Massachusetts law;

(3) a determination that provisions in the VGW Terms of Service that prevent customers from effectively vindicating statutory rights are void and unenforceable.

(4) recovery under the Massachusetts gambling loss recovery act, M.G.L. Ch. 137 § 1;

(5) restitution for unjust enrichment.

Plaintiff also seeks on his own behalf losses of Massachusetts residents pursuant to M.G.L. Ch. 137 § 1 which are not recoverable by class members.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Thomas Viel is an adult resident citizen of Worcester County, Massachusetts, within this district and division. He played the illegal gambling games described below in this district and division.

3. Defendant VGW, Ltd., is a foreign corporation headquartered in Perth, Australia. It does business through its online gambling games in all counties in Massachusetts, including Plaintiff's resident county. It does not have a physical place of business in the Commonwealth of Massachusetts.

4. Defendants VGW Holdings US, Inc., VGW US, Inc., and VGW Luckyland, Inc., are each a corporation organized under the laws of the state of Delaware, with its principal place of business in Boulder, Colorado. They each do business through online gambling games in all counties in Massachusetts, including Plaintiff's resident county. None of them have a physical place of business in the Commonwealth of Massachusetts.

5. VGW Canada is a corporation organized under Canadian law, with its principal place of business in Toronto, Ontario, Canada. It does not have a physical place of business in the Commonwealth of Massachusetts.

6. VGW GP Limited, VGW Malta Limited, and VGW Games Limited are limited liability companies incorporated under Maltese Law, with their principal places of business in Birkirkara, Malta. None has a physical place of business in the Commonwealth of Massachusetts.

7. Plaintiff, the plaintiff class, and defendants are citizens of different States and foreign states, and the aggregated amount in controversy in this class

action exceeds $ 5 million, exclusive of interest and costs. This Court therefore has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

8. Plaintiff also brings an individual claim with more than $75,000 at issue. Thus, the Court also has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

9. The events giving rise to plaintiff's claims occurred in this district and division, such that venue is proper in this forum pursuant to 42 U.S.C. § 1391(b)(2).

10. This Court has personal jurisdiction over VGW because the company has sufficient minimum contacts with Massachusetts to support specific personal jurisdiction in the state, and those contacts are directly related to Plaintiff's claims. See International Shoe Co. v. Washington, 326 U.S. 310 (1945).

11. VGW's minimum contacts with the Commonwealth of Massachusetts include ongoing contractual relationships created by the terms and conditions on the Defendants' websites, which include Chumba Casino and Luckyland. VGW required Plaintiff and all other Massachusetts customers to agree to these terms. Both the First Circuit and the United States Supreme Court, among many others, have found that personal jurisdiction is proper where companies have "initiated an ongoing relationship with [] in-forum purchasers." Knox v. MetalForming, Inc., 914 F.3d 685, 693 (1st Cir. 2019); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

12. VGW's contacts with Massachusetts also include direct solicitations and other communications, instituted by the company, with customers in the Commonwealth. These include in-game messages and advertisements sent to players. Further, social and sweeps casino companies specifically target individuals who spend money on the apps, including by sending them direct, targeted advertisements to play the game, purchase coins, or participate in particular features of the games. See "How social casinos leverage Facebook user data to target vulnerable gamblers," PBS News Hour, available at https://www.pbs.org/newshour/show/how-social-casinos-leverage-facebook-user-data-to-target-vulnerable-gamblers (last accessed July 11, 2025). These communications and advertisements specifically directed by VGW to particular current and prospective players in Massachusetts constitute purposeful contacts with the state.

## RELEVANT FACTS

### A. Defendants' Gambling Games

13. VGW is a game developer that has created games that simulate slot machines and other gambling games, including Chumba Casino and Luckyland, which it makes available to the public at www.chumbacasino.com and www.luckylandslots.com.

14. VGW's games operate with two forms of virtual coins. The first are called gold coins. Gold coins when won cannot be redeemed for real-world currency. However, when users play with gold coins and win more gold coins, the gold coins won can be used to extend their playing time without having to purchase more coins, and thus they obtain more amusement, a valuable consideration under Massachusetts gambling law. Commonwealth v. Rivers, 82 N.E. 2d 216, 218 (Mass. 1948) ("It is the free play itself that is the 'property of value' however evidenced.").

15. The other virtual coins used by VGW's websites are called Sweeps Coins. VGW maintains that Sweeps Coins cannot be purchased. However, when individuals purchase packages of gold coins, they are "given" a set number of Sweeps Coins. Sweeps Coins can be redeemed for real-world currency. Thus, when customers play with them, they are gambling real money, whether the VGW describes it this way or not.




16. The games on VGW's websites are games of chance. They are available online through its websites, Chumba Casino and Luckyland, to the public in Massachusetts through the websites www.chumbacasino.com and www.luckylandslots.com. Here is an example of one of VGW's games:



17. Plaintiff Thomas Viel spent money on packages including gold coins and sweeps coins, played VGW's gambling games, and lost money on the games within the six months preceding the filing of this complaint.

### B. Defendants' Games Have Gravely Harmed the Class and the Commonwealth of Massachusetts.

18. The social ills caused by "social casino" and "sweeps casino" games are well-documented. Media reports how gambling addicts spend enormous, and completely unaffordable, amounts of money on these casino games. One nurse in Houston is reported to play a slot machine game similar to defendants' here for a minimum of two hours a day. (Ex.1https://www.nbcnews.com/tech/technews/addicted-losing-how-casino-apps-have-drained-people-millions-n1239604 (last accessed on Aug. 19, 2024)). Between her and her husband, who plays the game with her, she estimates they have lost $150,000. She asked NBC News to withhold her name "so her family does not find out how much money they have spent on the game." (Id.). She said her and her husband "lie in bed next to each other, we have two tablets, two phones and a computer and all these apps spinning Reel Rivals at the same time. We normalize it with each other." (Id.). This is not an isolated instance.

19. NBC News spoke to 21 people, including Shellz [the Houston nurse] and her husband, who said they were hooked on the casino-style games and spent

significant sums of money. They described feelings of helplessness and wanting to quit but found themselves addicted to the games and tempted by the company's aggressive marketing tactics. "Most of the 21 players wished to remain anonymous, as they were ashamed of their addictions and did not want their loved ones to find out about their behavior." (Id.). For example, a "42-year-old Pennsylvania woman said she felt saddened that she spent $40,000 [on a social casino app that competes with defendants'] while working as an addiction counselor. 'The whole time I was working as an addiction counselor, I was addicted to gambling and with no hope of winning any money back,' she said." Such problems are only exacerbated by "sweeps casinos," where users have access to gambling games where they can win cash money, and not just additional play-time, twenty-four hours a day, seven days a week.

20. Anecdotal reports of gambling addictions in connection with social casino and sweeps casino games like defendants' are buttressed by recent scientific studies that confirm that such apps not only appeal to gambling addicts, but have a particular appeal to teenagers. One of the more troubling statistics comes from studies that show that 30% of users of these games between the ages of 12 and 18 later become regular gamblers. Hollingshead, et al., "Motives for playing social casino games and the transition from gaming to gambling (or vice versa): social casino game play as harm reduction?" 46 Journal of Gambling Issues 43 (2021).

21. Companies in the social casino and sweeps casino industry, including defendants, have extracted tens of millions of dollars from Massachusetts's economy in the last five years, all without adding anything to the economy of the state or paying a dime in taxes to Massachusetts's treasury. Instead, the money extracted from Massachusetts's economy ends up in not only in Defendants' home country of Australia, but also in places like Hong Kong, Gibraltar, Israel, and Cyprus, where other major companies in the industry are headquartered. According to research on the industry as a whole, social casinos and sweeps casinos had estimated 2024 revenues of 7.1 billion and 10.6 billion, respectively. https://kpmg.com/kpmg-us/content/dam/kpmg/pdf/2025/sweepstakes-gaming-emerging-industry-primer.pdf. Revenue in the sweeps casino segment has been growing at a rapid pace, with projections of 2025 gross revenues above $14 billion and net revenues of almost $5 billion. Id. Even if Massachusetts consumers represent but a percentage of that total, the reality is that a great deal of money is being siphoned from the state's economy each year.

## CLASS ALLEGATIONS

22. Plaintiff seeks to certify and represent a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class sought to be certified is defined as follows:

> All Massachusetts residents who spent money on VGW's websites (www.chumbacasino.com and www.luckylandslots.com) within the

applicable statute of limitations for each of the class claims set forth below and continuing to a date to be set by the Court following certification. All employees of the Court, and plaintiff's counsel, and their families, are excluded.

23. This class action satisfies the numerosity requirement of Rule 23(a)(1) because joinder of all members of the plaintiff class is impracticable. There are thousands of Massachusetts residents who are members of the class.

24. This class also satisfies the commonality requirement of Rule 23(a)(2) because there are central questions of fact and law that are common to the class. Such common questions include, at a minimum, (a) whether VGW's games are games of chance; (b) whether free play is a thing of value under Massachusetts law, (c) whether individuals playing with Sweeps Coins can recover real money; (d) whether VGW's games constitute illegal gambling under Massachusetts law; (e) whether class members are entitled to recover their losses pursuant to Chapter 137, Section 1 of the Massachusetts General Law; (f) whether VGW represented on its website or in advertisements that its gambling games do not constitute "real money gambling;" (g) whether VGW represented on its website or in advertisements that its gambling games are legal in Massachusetts; (h) whether these misrepresentations constitute deceptive trade practices under Massachusetts law; (i) whether VGW was unjustly enriched by its illegal activities; (j) whether VGW's terms of service are unenforceable under federal law because they set forth the terms and conditions under which illegal gambling under federal law occurs; and (k) whether VGW's

terms of service, and the arbitration agreement contained therein, are each void under Massachusetts law.

25. The proposed class satisfies the typicality requirement of Rule 23(a)(3) because the named plaintiff's claims are typical of the claims of the class members. Both plaintiff and the class members lost money in an effort to win either money (with sweeps coins) or additional playing time and amusement (with gold coins) on these illegal gambling games.

26. The named plaintiff will fairly and adequately represent the interests of the class pursuant to Rule 23(a)(4). Plaintiff has no interests that conflict with the interests of the class. Furthermore, plaintiff has retained competent and experienced counsel with decades of experience litigating class cases.

27. Plaintiff seeks certification of the class pursuant to Rule 23(b)(3), which allows class treatment of a claim where:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A)the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)the likely difficulties in managing a class action.

28. The common questions of law and fact in this case vastly predominate over any individual issues affecting only individual class members. The ***only*** individual issue presented by these class members is the exact amount of money damages to which each class member is entitled. Such damages issues are routinely held not to predominate over common questions in cases like this. Indeed, the individual damages issues can be quickly and accurately resolved by examining VGW's own records.

29. Class treatment is by far superior to individual litigation as a fair and efficient way to adjudicate this controversy. Given the relatively small individual amounts at issue, it is unlikely that there would be any adjudication of the class claims in this case at all absent their litigation in a class setting.

30. For this reason, none of the class members have any interest in controlling the prosecution of separate actions. Likewise, to our knowledge, no class member has commenced a pending action concerning this controversy.

31. It would be much more desirable to concentrate this case in one action rather than allow the prosecution of individual actions because, as noted, such individual actions would likely never be filed because class members would be unlikely to have any motivation to file an individual suit.

32. Plaintiff's counsel foresee no particular difficulties in managing this case as a class action because all of the necessary information to compensate the individual class members is contained in VGW's own records concerning users' purchases and in the records of the platforms that facilitate the service. Defendants and the platforms defendants use to provide the games keep extensive records which will demonstrate not only the aggregate amounts lost by players in Massachusetts, but the identities of the individual players and the amounts of their individual losses. This information is easily ascertainable in discovery.

**VGW'S GAMES VIOLATE MASSACHUSETTS AND FEDERAL LAW**

33. Outside of those types of gaming specifically licensed by Chapter 23K of the Massachusetts General Laws, gambling is illegal in the commonwealth. Case law has defined illegal gambling as having three elements: price, chance, and prize. Commonwealth v. Rivers, 82 N.E. 2d 216, 219 (Mass. 1948). As noted above, the Supreme Judicial Court in Rivers also explicitly found that free play is a thing of value, sufficient to meet the "prize" element. Id.

34. VGW's games violate Massachusetts law both with regard to the "gold" coins that are bet in hopes of receiving more gold coins redeemable for additional gameplay as well as the "sweeps" coins that are bet in hopes of receiving more sweeps coins that are redeemable for cash money. This is true with regard to the gold coins because the courts have held that free play constitutes a thing of value, and

thus this satisfies the prize element, while "tokens" or virtual coins likewise satisfy the price element, as Rivers also noted that "it matters little" whether the free play "was evidenced by tokens or by an automatic recorded score." Id. at 219. With regard to the sweeps coins gambling, this is nothing more than betting money in hopes of winning money. Finally, there can be little doubt that simulated slot machines also constitute games of chance. VGW has never taken the position that its games involve any level of player skill.

35. Because VGW's games are games of chance in which players gamble for a thing of value, whether the Sweeps Coins (redeemable for cash) or the Gold Coins (redeemable for continued playing time), they are illegal under Massachusetts law.

36. Because the gambling games are illegal in Massachusetts, when such games are played in Massachusetts, they are also illegal under federal law pursuant to 18 U.S.C. § 1955, as more fully set forth in Count One below.

## CLAIMS FOR RELIEF

## COUNT ONE: DECLARATORY ACTION THAT THE GAMBLING IS ILLEGAL UNDER FEDERAL LAW, MAKING DEFENDANTS' TERMS OF SERVICE UNENFORCEABLE IN FEDERAL COURT

37. Plaintiff incorporates the factual and legal averments of Paragraphs 2-36 by reference as if fully set forth in this count.

38. Plaintiff seeks, on behalf of himself and the class, a declaratory judgment that:

> a. VGW's conduct in Massachusetts is an "illegal gambling business" under 18 U.S.C. § 1955;
>
> b. The "Terms of Service" found on VGW's websites (www.chumbacasino.com and www.luckylandslots.com) set out the terms and conditions under which VGW's illegal gambling is conducted; and
>
> c. The Terms of Service are unenforceable in federal court.

39. The relevant language of 18 U.S.C. Section 1955 states:

> (1) "illegal gambling business" means a gambling business which—
>
> > **(i)** is a violation of the law of a State or political subdivision in which it is conducted;
> >
> > **(ii)** involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
> >
> > **(iii)** has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

28 U.S.C. § 1955(b)(1).

40. As to the first element required to find an illegal gambling business, under section 1955, VGW's games, as played with both gold coins and sweeps coins, are in fact illegal gambling under Massachusetts law.

41. As explained above, Massachusetts bars all unregulated gambling, defined by the three elements of price, chance, and prize. See ¶¶ 34-35 supra. Whether played with gold coins or sweeps coins, VGW's games fit this definition.

42. Notwithstanding VGW's misrepresentation to the contrary, when played with sweeps coins, VGW's games constitute real money gambling because users can get sweeps coins by spending real money, can risk those sweeps coins on games or schemes of chance to try and win more, and can redeem their sweeps coins for cash.

43. VGW's games also constitute illegal gambling when played with gold coins, because, notwithstanding VGW's misrepresentation to the contrary, they are redeemable for continued or additional amusement. The Massachusetts Supreme Judicial Court has made it abundantly clear that additional amusement is a thing of value sufficient to satisfy the prize element of illegal gambling. Commonwealth v. Rivers, 82 N.E. 2d 216, 218 (Mass. 1948) ("It is the free play itself that is the 'property of value' however evidenced.").

44. As to the second element under Section 1955, VGW certainly employs more than 5 persons who conduct, finance, manage, supervise, direct or own all or part of its business.

45. The third element of Section 1955 is also met. VGW has both been in business for more than 30 days in Massachusetts, and has had gross revenue of more

than $2000 in a single day. VGW has conducted business in Massachusetts for multiple years, and has collected gross revenue of more than $2000 in a single day on multiple occasions.

46. Because all three elements of Section 1955 are met, VGW's conduct in Massachusetts constitutes an illegal gambling business, and Claimant's first request for declaratory judgment is due to be granted.

47. The second request for declaratory judgment should also be granted. The "Terms of Service" found on VGW's websites, do in fact set out the terms and conditions under which the illegal gambling thereon is conducted. Plaintiff expects VGW will challenge the words "illegal" and "gambling" in this request, but will likely not dispute the fact that its terms of service govern the operation of the games and all of the activity it conducts in Massachusetts.

48. Because the contract embodied in the terms of service, as described above, is illegal pursuant to federal law, namely 18 U.S.C. § 1955, federal courts, pursuant to United States Supreme Court precedent, are not permitted to enforce the contract in aid of such illegal activity. See Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 84 (1982), which held:

> It is . . . well established . . . that a federal court has a duty to determine whether a contract violates federal law before enforcing it. "The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in . . . federal statutes. . . . Where the enforcement of private agreements would be violative of that

> policy, it is the obligation of courts to refrain from such exertions of judicial power."

(quoting Hurd v. Hodge, 334 U.S. 24, 34-35 (1948)).

**COUNT TWO: DECLARATORY ACTION THAT DEFENDANTS' TERMS OF SERVICE AS A WHOLE AND THE ARBITRATION PROVISION ITSELF ARE EACH VOID UNDER MASSACHUSETTS LAW**

49. Plaintiff incorporates the factual and legal averments of Paragraphs 2-48 by reference as if fully set forth in this count.

50. As set forth above, defendants' games are governed by terms of service that facilitate the illegal gambling.

51. VGW's terms and conditions also contain provisions within the arbitration agreement that exist in aid of the illegal gambling conduct, and are thus void and unenforceable. For example, the terms attempt to prevent VGW's customers from both arbitrating or litigating any dispute concerning the losses of third parties. Chapter 137, Section 1 of the Massachusetts General Law, as explained below, provides a cause of action for the losses of third parties. Thus, this provision attempts to exculpate VGW from the clear consequences of its intentional illegal activity in Massachusetts. www.chumbacasino.com/documents/250731-POL-CHU-T&Cs-18-0.pdf) at 24.7; https://luckylandslots.com/terms at 24.7.

52. In Massachusetts, contracts that are against public policy are void. See Beacon Hill Civic Ass'n v. Ristorante Toscano, Inc., 662 N.E.2d 1015, 1017 (Mass. 1996). "Massachusetts courts will decline to enforce contracts on the ground that

they are void as against public policy in the unusual circumstance where the 'public interest in freedom of contract is … outweighed by public policy.'" Santos v. City of Fall River, 942 F. Supp. 2d 178, 186 (D. Mass. 2013) (quoting Beacon Hill, 662 N.E. at 1017). Courts make this decision where "[t]he public policy affronted" is "derived from legislation or legal precedent rather than from general considerations of supposed public interests." Santos, 942 F. Supp. 2d at 186 (citing Genzyme Corp. v. Fed. Ins. Co., 622 F.3d 62, 69 (1st Cir. 2010).

53. Massachusetts courts have long held that gambling contracts are void and unenforceable. See, e.g., Beers v. Wardwell, 84 N.E. 306 (Mass. 1908) (noting that wagering contracts were "alike prohibited at common law and by statute.") (citing, inter alia, Barnes v. Smith, 159 Mass 344, 346 (Mass. 1893); Lyons v. Coe, 177 Mass. 382, 383 (Mass. 1901).

54. Massachusetts' public policy against unregulated gambling remains strong, as a recent case decided by the Supreme Judicial Court makes clear. Gattineri v. Wynn MA, LLC, 211 N.E. 3d 742, 744 (Mass. 2023). In Gattineri, the Supreme Judicial Court answered a certified question from the First Circuit, determining that a side deal outside the strictures of Massachusetts' regulated gambling laws (Chapter 23K) was void as violative of public policy. 221 N.E. 3d at 744. The court recognized that "the need for strict regulation []has been consistently emphasized in our

gambling statutes and our case law." Id. Therefore, a purported contract outside that regulation was void and unenforceable because it was against public policy.

55. Likewise, VGW's gambling contract, which does not comply with the strict regulation of Chapter 23K, must also be found void and unenforceable because it violates the public policy of Massachusetts. The arbitration agreement, which both furthers the illegal gambling activity that is the purpose of the contract and attempts to exculpate VGW from the consequences of intentional illegal activity (see ¶ 51, supra) is itself also void.

56. Plaintiff seeks on his own behalf and on behalf of the class, a declaration that VGW's terms of service, and, separately, the arbitration agreement contained therein, are each void under Massachusetts law.

**COUNT THREE: DECLARATORY ACTION THAT DEFENDANT'S TERMS OF SERVICE VIOLATE JAMS MINIMUM STANDARDS AND THE EFFECTIVE VINDICATION DOCTRINE**

57. Plaintiff incorporates the factual and legal averments of Paragraphs 2-56 by reference as if fully set forth in this count.

58. As is explained in the Note on Arbitration below, Plaintiff and the members of the class are ostensibly subject to an arbitration agreement, which VGW requires each of its customers to assent to before playing the illegal gambling games. This purported arbitration agreement names Judicial Arbitration and Mediation Services (JAMS) as the arbitration forum.

59. JAMS has promulgated "Minimum Standards for Arbitration Procedures" for use in consumer arbitrations, which are available online at https://www.jamsadr.com/consumer-minimum-standards/ (last accessed August 28, 2025).

60. Principle 3 of these Minimum Standards states that "[r]emedies that would otherwise be available to the consumer under applicable federal, state or local laws must remain available under the arbitration clause, unless the consumer retains the right to pursue the unavailable remedies in court." https://www.jamsadr.com/consumer-minimum-standards/ (last accessed August 28, 2025).

61. The United States Supreme Court has also explicitly found that arbitration agreements that are written to prevent a party from pursuing statutory remedies are invalid. American Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013) (citing, inter alia, Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991)).

62. The Italian Colors court, while holding that the exception did not apply to the case at bar, stated in strong terms that the effective vindication doctrine "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." 570 U.S. at 236.

63. VGW's Terms of Service explicitly attempt to forbid the assertion of certain rights in both arbitration and litigation. For example, the terms attempt to prevent VGW's customers from both arbitrating or litigating any dispute concerning the losses of third parties, a statutory right directly authorized by the final clause of Chapter 137, Section 1 of the Massachusetts General Law. www.chumbacasino.com/documents/250731-POL-CHU-T&Cs-18-0.pdf) at 24.7; https://luckylandslots.com/terms at 24.7.

64. These provisions of VGW's Terms of Service, including but not limited to the prohibition on actions for the recovery of the losses of third parties and private attorney general actions, run directly afoul of the JAMS Minimum Standards and the effective vindication doctrine set forth by the United States Supreme Court.

65. Plaintiff, on behalf of himself and the class, seeks a determination that provisions in the VGW Terms of Service that prevent customers from effectively vindicating statutory rights are void and unenforceable.

**COUNT FOUR: CLASS CLAIMS FOR INDIVIDUAL LOSSES**

66. Plaintiff incorporates the factual and legal averments of Paragraphs 2-65 by reference as if fully set forth in this count.

67. Chapter 137, Section 1 of the Massachusetts General Law provides a statutory cause of action to recover money lost in illegal gambling:

> Whoever, by playing at cards, dice or other game, or by betting on the sides or hands of those gaming, except for gaming conducted in

> licensed gaming establishments pursuant to chapter 23K or sports wagering conducted pursuant to chapter 23N, loses to a person so playing or betting money or goods, and pays or delivers the same or any part thereof to the winner, or whoever pays or delivers money or other thing of value to another person for or in consideration of a lottery, policy or pool ticket, certificate, check or slip, or for or in consideration of a chance of drawing or obtaining any money, prize or other thing of value in a lottery or policy game, pool or combination, or other bet, may recover such money or the value of such goods in contract

M.G.L. Ch. 137 § 1.

68. On behalf of himself and all others similarly situated, Thomas Viel seeks for each class member recovery of the amount paid through purchases on VGW's websites within the three months preceding the filing of this complaint, minus any amounts that player was actually paid back as a result of winnings, pursuant to Chapter 137, Section 1 of the Massachusetts General Law.

## COUNT FIVE: INDIVIDUAL CLAIM FOR THIRD PARTY LOSSES

69. Plaintiff incorporates the factual and legal averments of Paragraphs 2-68 by reference as if fully set forth in this count.

70. After the three-month period during which the losing gambler may recover his or her money, Chapter 137, Section 1 of the Massachusetts General Law contains an additional clause allowing any other person to sue and recover treble damages in tort. After the portion of the statute quoted above in Paragraph 54 allowing the gambling loser to recover his money, the statute goes on:

> and if he does not within three months after such loss, payment or delivery, without covin or collusion, prosecute such action with effect, any other person may sue for and recover in tort treble the value thereof.

M.G.L. Ch. 137, § 1.

71. Pursuant to the final clause of Chapter 137, § 1 of the Massachusetts General Law, Thomas Viel claims, on his own behalf, the total of the net losses by purchasers of virtual currency on VGW's websites that occurred more than three months and less than one year prior to the filing of this complaint that are not, for any reason, recoverable by the class pursuant to counts five and six.

**COUNT SIX: UNJUST ENRICHMENT**

72. Plaintiff incorporates the factual and legal averments of Paragraphs 2-71 by reference as if fully set forth in this count.

73. In Massachusetts, "[a] claim for unjust enrichment requires three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." Fine v. Guardian life Ins. Co. of America & Park Ave. Securities, 450 F. Supp. 3d 20, 35 (D. Mass. 2020) (internal citations omitted).

74. Here the first two elements are obvious and will likely be undisputed. Defendants retained a benefit when Plaintiff and the class purchased Gold Coins and Sweeps Coins from VGW's websites, and it knew of the existence of their purchases.

75. Because the only purpose of the virtual coins being purchased is to gamble with them on Defendants' illegal gambling games, Defendants' retention of the monies paid in these illegal games constitute unjust circumstances. Thus, the elements of unjust enrichment are met, and the funds that were illegally obtained should be returned to class members.

76. In Massachusetts, the statute of limitations for unjust enrichment claims depends on the nature of the claim, because "the statutes of limitation applicable to law actions based on contract and tort are also applicable in equity." Desmond v. Moffie, 375 F.2d 742, 743 (1st Cir. 1967). Thus, as applied to unjust enrichment, "[a] claim sounding in tort is subject to a three year statute of limitations, while one sounding in contract is subject to a six year limitations period." Max-Plack-Gesellschaft Zur Forderung Der Wissenchaften E.V. v. Whitehead Institute for Biomedical Research, 2010 WL 2900340 at *2 (D. Mass Jul. 26, 2010) (citing M.G.L. ch. 260 §§ 2, 2A.

77. As stated in Chapter 137, Section 1, the first-party claims of Plaintiff and the class for the refund of money spent on VGW's illegal gambling websites sound in contract:

> Whoever, by playing at cards, dice or other game, or by betting on the sides or hands of those gaming, except for gaming conducted in licensed gaming establishments pursuant to chapter 23K or sports wagering conducted pursuant to chapter 23N, loses to a person so playing or betting money or goods, and pays or delivers the same or any part thereof to the winner, or whoever pays or delivers money or other thing of value to another person for or in consideration of a lottery, policy or pool ticket, certificate, check or slip, or for or in consideration of a chance of drawing or obtaining any money, prize or other thing of value in a lottery or policy game, pool or combination, or or other bet, may recover such money or the value of such goods **in contract**

M.G.L. Ch. 137 § 1.

78. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adopting the class allegations found in Paragraphs 22-32 above, Plaintiff seeks to recover all money lost by a class of persons who played VGW's illegal gambling games during the six years preceding the filing of the complaint.

## NOTE ON ARBITRATION

79. Plaintiff Thomas Viel and the members of the class are subject to arbitration agreements which VGW requires all of its users to agree to.

80. The arbitration agreements are found in the Terms of Service (or Terms and Conditions) of VGW's websites, Luckyland Slots and Chumba Casino, respectively.

81. It is for an arbitrator to determine whether these Terms and Conditions constitute an illegal contract that is unenforceable in a federal court pursuant to Massachusetts and federal law.

82. The United States Supreme Court has made it clear that the determination of illegality of a contract containing an arbitration clause is for the arbitrator in the first instance. See, e.g., Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 446 (2006).

83. The arbitrator must also determine whether the contract between VGW and its customers is void in Massachusetts as against the state's clear public policy against unregulated gambling. See Gattineri v. Wynn MA, LLC, 211 N.E. 3d 742, 744 (Mass. 2023).

84. The Supreme Court has also held that federal courts must stay, rather than dismiss, when a party requests a stay pending arbitration. Smith v. Spizzirri, 601 U.S. 472, 474 (2024) (noting that Section 3 of the Federal Arbitration Act does not "permit[] a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration.")

85. Plaintiff intends to file a motion to stay pending the outcome of arbitration. Under Smith v. Spizzirri, this motion is due to be granted.

**PRAYER FOR RELIEF**

Pursuant to the legal and factual averments above, Plaintiff respectfully asks this court to:

1. Take jurisdiction of this cause;

2. Grant plaintiff's motion to stay the case pending the outcome of arbitration;
3. Following arbitration and discovery, certify counts one, two, three, four, and six of this complaint as a class action pursuant to Rule 23(b)(3);
4. Appoint the undersigned as Class Counsel and the named plaintiff as class representative;
5. Enter a final judgment against VGW awarding plaintiff and the class members a refund of their net losses on VGW's illegal gambling games in the period between three months prior to the complaint and the entry of judgment under Massachusetts's gambling loss recovery statute;
6. Enter a final judgment against VGW awarding plaintiff and the class members, restitution of all amounts unrecovered under count four, by which VGW was unjustly enriched during the period between six years prior to the filing of the complaint and the entry of judgment;
7. Enter a final judgment against VGW awarding to plaintiff treble the amount of all money lost in VGW's illegal gambling games by Massachusetts residents during the period between one year prior to the filing of the complaint and three months prior to the filing of the complaint, to the extent that such losses have not been recovered under counts four and six;

8. Award Class Counsel reasonable attorneys' fees and expenses to be paid from the common fund judgment in favor of the class;

9. Award the named plaintiff a reasonable sum of money for his services in this case on behalf of the class, also to be paid out of the judgment in favor of the class;

10. Award interest and costs; and

11. Award any other relief to which the Court finds plaintiff and the class are entitled.

Respectfully submitted this 2nd day of September 2025,

/s/ Brian L. Kinsley
Attorney for Plaintiff

**COUNSEL:**

Brian L. Kinsley MA BBO#641623
Cox, Stansberry & Kinsley
113 2nd Ave, NE
P.O. Box 40
Cullman, AL 35056
Telephone: 205.598.4228
Facsimile: 256.2036463
blkinsley@cskattorneys.com

Dargan M. Ware (*pro hac vice* anticipated)
John E. Norris (*pro hac vice* anticipated)
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
dware@davisnorris.com
jnorris@davisnorris.com